**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **COREY STEELE,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No. 3:19-CV-1679-N-BH** |
| | ) | |
| **UNICON GROUP, et al.,** | ) | |
| **Defendants.** | ) | **Referred to U.S. Magistrate Judge[1]** |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Before the Court for recommendation is *The Defendant Judge Monica Purdy's Rule 12 Motion to Dismiss, Alternative Motion for Abstention and Brief in support*, filed October 3, 2019 (doc. 31). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED**. The plaintiff's claims against the defendant in her official capacity should be **DISMISSED without prejudice** for lack of subject matter jurisdiction, and any claims against her in her individual capacity, as well as any claim for ethics and disciplinary committee review, should be **DISMISSED with prejudice** for failure to state a claim.

**I. BACKGROUND**

Corey Steele (Plaintiff) sues an associate state district judge (Judge) for allegedly violating his constitutional rights by granting injunctive relief against him in a state civil case.

**A.    State Lawsuit**

On May 29, 2019, Plaintiff filed suit against Unicon Group, LLC and CY Addison Hospitality Partner, LLP, in the 68th Civil District Court of Dallas County, Texas, over improvements on a property located in Addison, Texas. (doc. 3 at 2.)[2] He claimed to have video

---

[1] By *Special Order* No. 3-251, this *pro se* case was automatically referred for full case management, including determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page.

evidence of "criminal actions" committed by them, which he made available on his YouTube account. (*See id* at 3; doc. 39 at 20.)  The defendants retained counsel to defend the lawsuit. (*Id.* at 2.)  Between May 29, 2019, and June 14, 2019, Plaintiff sent twenty emails attempting to "meet and confer" about his case, but did not receive a response. (*See id.*)

On June 26, 2019, the state defendants' attorney filed a letter informing Plaintiff that she was seeking an *ex parte* hearing to obtain a temporary restraining order (TRO) against him for "immediate protection from the imminent threat of physical danger," and demanding that he delete the videos from his YouTube account. (*Id*. at 3, 75.)  At the *ex parte* hearing, Judge granted the TRO, finding that the state defendants would "be irreparably injured due to Plaintiff's repeated attempts to harass and extort [them], given Plaintiff's previous behavior in the six other cases [he] filed . . . given his admitted mental illness, and also given [Plaintiff's] general inability to control his behavior[.]" (*Id*. at 2, 93.)  Judge set a hearing for July 10, 2019, "in order to turn the TRO into the current temporary injunction." (*Id*. at 3.)

At the hearing on July 10, 2019, the defendants' attorney argued that the twenty emails sent by Plaintiff, and the documents he served through the "Texas E-File service provider," constituted harassment and extortion. (*Id*. at 3.)  Plaintiff attempted to record the hearing, arguing that he had a First Amendment right to record it, but Judge "barred [P]laintiff from recording the proceedings," since the court reporter's notes were sufficient to preserve the record. (doc. 39 at 23.)  The bailiff forced him to stop recording, which he claims "left [him] defenseless from the breaches of ethics[,] morality, and civil rights" that occurred. (doc. 3 at 4.)  Judge found there was "good cause in the provided evidence and testimony to order the [temporary] injunction," and that there was good cause to consider that Plaintiff posed a threat of physical harm to the defendants because he was a former

infantry man. (*See id*. at 3.) She noted that the injunctive relief was sought for the "purpose of preventing harassment and extortion and placing parameters on the actions that are not allowed by order of [the court] and to give Plaintiff notice of [those] parameters." (*Id*. at 100.)

Plaintiff claims that "without trial and without impartial jury," Judge's order declared him to be an extortionist, mentally ill, having engaged in a pattern of harassing behavior, having made violent threats against litigants, and a threat to the physical safety and well being of the general public. (*Id*. at 4; doc. 39 at 15.) He also claims his Sixth Amendment rights were violated when he "was not offered or provided legal representation for the proceedings in which he was declared to be a criminal." (doc. 39 at 14.) According to him, Judge issued an order to show cause for contempt and set a hearing for dismissal of his case for July 17, 2019. (doc. 3 at 2; doc. 39 at 22.)

On September 10, 2019, Judge issued an order of contempt against Plaintiff. (doc. 39 at 22.) He alleges that Judge was induced by the state defendants' attorney into unlawfully requiring that he delete his videos under threat of criminal contempt," violence, and fear, including prison confinement, and financial sanctions," if he refused to comply with the injunction. (*Id*. at 20-21.) Plaintiff complied with the order, alleging that the state court "essentially forced the deletion of these video's exclusively as a result of . . . the underlying suit." (*Id*. at 21-22.)

**B.    Federal Lawsuit**

On July 12, 2019, Plaintiff filed this lawsuit under 42 U.S.C. § 1983 against Judge, in her official capacity, alleging that she violated his First Amendment rights by requiring him to delete videos from his YouTube account, and by refusing to allow him to record the hearing for temporary injunction. (doc. 3 at 2-3; doc. 39 at 10.)[3] He alleges that the "injunction causes immediate,

---

[3] Although Plaintiff sued multiple defendants, only Judge has appeared in this case. (*See* doc. 31.) The docket does not reflect valid proof of service on any of the other defendants.

irreparable, and extreme harm to [his] reputation," and that "[m]onetary damages at a later time would not adequately compensate [him] for the injuries currently sustained, [he is] sustaining, or will sustain," as a result of the injunction. (doc. 3 at 4.)  He seeks a federal court order lifting the state court injunction and directing the state court to remove the TRO and injunction from the official records, an order for ethics and disciplinary committee review of the attorneys and Judge, an order that he be allowed to record judicial hearings, a coffee mug from each defendant, and $1.00 in punitive damages. (*Id.*)

On October 3, 2019, Judge moved to dismiss this action based on judicial immunity, and alternatively, under the *Younger* abstention doctrine. (doc. 31.) In his November 25, 2019 response, Plaintiff claims that "the evidence and record should show the state level proceedings have ceased," and therefore there is no basis for abstention. (doc. 39 at 7.)  He adds claims for violation of his Fourth Amendment rights based on the alleged unreasonable seizure of his YouTube videos, violation of his Sixth Amendment right to counsel when he was "found to be guilty of criminal extortion and harassment," and violation of his Eighth Amendment right to freedom from cruel and unusual punishment when he was declared an extortionist and declared to exhibit harassing behavior, as well as claims for  violations of his Ninth, Thirteenth, and Fourteenth Amendment rights. (doc. 39 at 13-14,16-19.)  He clarifies that he brings his claims against Judge in her official capacity, waives all monetary relief against her, and seeks relief "strictly limited to only include Mandamus, Injunctive and Declaratory Relief." (doc. 39 at 2, 10.)

## II. RULE 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts

of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.  For this reason, Judge's abstention argument is considered first.

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction.

5

*See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). If sufficient, those allegations alone provide jurisdiction. *Id*. Facial attacks are usually made early in the proceedings. *Id*. "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F.Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, because Judge relies on Plaintiff's complaint, she presents a facial attack that does not require the Court to resolve matters outside the pleadings. *See Bridgewater v. Double Diamond–Delaware, Inc*., No. 3:09-CV-1758-B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010); *Lester v. Lester*, No. 3:06-CV-1357-BH, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009).

## A.    Eleventh Amendment

As noted, Plaintiff expressly sues Judge in her official capacity, and he seeks mandamus, injunctive and declaratory relief.  (*See* doc. 39 at 2, 10.)[4]

---

[4]  Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction." *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).  As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a dispositive motion are not properly before the court. *See Hearn v. Deutsche Bank Nat. Trust Co.*, 3:13-CV-2417-B, 2014 WL 4055473, *4 n. 3 (N.D. Tex. Aug. 15, 2014); *Middleton v. Life Ins. Co. of North America*, H-09-CV-3270, 2010 WL 582552, *5 (S.D. Tex. Feb. 12, 2010) (claim raised for first time in response to motion to dismiss was not properly before the Court) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)*; see also Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's claims against Judge arise from the performance of her duties as an associate judge of a state district court, and he seeks an order lifting the injunction entered against him by the state court, and an "order directing the State to remove the states [injunction] from the official record of the court." (doc. 3 at 4.)[5] The State of Texas is the real party in interest when the plaintiff seeks relief that would be provided by the state. *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) (citing *Holloway v. Walker*, 765 F.2d 517, 519 (5th Cir.), *cert. denied*, 474 U.S. 1037 (1985)) (citing *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 101 & n. 11 (1984)). Plaintiff's suit against Judge in her official capacity as an associate state district judge is therefore a suit against the State. *See id.; see also Kentucky*, 473 U.S. at 165.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This

---

a claim raised for the first time in a response to a motion for summary judgment is not properly before the court). Nevertheless, the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend. *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend); *see also Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"). "This is particularly true where ... the litigant is *pro se* and has not yet made any amendments to her complaint." *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010). Accordingly, Plaintiff's allegations, exhibits, and Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment claims in his response to Judge's motion to dismiss are construed as a motion to amend, the motion is granted, and the new Sixth, Eighth, Ninth, Thirteenth, and Fourteenth Amendment claims, allegations, and exhibits are considered.

[5] The position of civil associate judge is created by the county commissioners court, and the salary is paid from county funds. Tex. Gov. Code §§ 54A.102(a), 54A.104. Civil associate judges are appointed by state district judges, however, and are empowered to perform certain state district judge duties in civil cases referred to them by state district judges. Tex. Gov. Code §§ 54A.106-108.

withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  This immunity applies to both federal and state law claims brought in federal court.  *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curiam) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).  Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983.[6]  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam).

With respect to suits for injunctive or declaratory relief against individual state officials, however, the Supreme Court has created an exception to Eleventh Amendment immunity.  *Raj*, 714 F.3d at 328 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)); *see also Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321–22 (5th Cir. 2008) ("Pursuant to the *Ex Parte Young* exception, the

---

[6]  Plaintiff sues Judge under 42 U.S.C. § 1983, which "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id*.  To state a claim, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity."). Under this exception, "claims against state officials for prospective injunctive relief under § 1983 . . . are not barred by sovereign immunity." *Kobaisy v. Univ. of Miss.*, 624 F. App'x 195, 198 (5th Cir. 2015) (citing *Nelson*, 535 F.3d at 324); *see May v. N. Tex. State Hosp.*, 351 F. App'x 879, 880 (5th Cir. 2009) (citing *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (stating that the *Ex Parte Young* exception "applies to suits that allege a violation of federal law that are 'brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.'")

"Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity." *Warnock*, 88 F.3d at 343. Plaintiff's claims against Judge in her official capacity for mandamus relief, and any claims other than his claims for prospective injunctive and declaratory relief, are barred by Eleventh Amendment immunity. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 690 (N.D. Tex. 2014) (dismissing claims that were barred by Eleventh Amendment immunity under Rule 12(b)(1) for lack of subject matter jurisdiction). As noted, a court may raise a Rule 12(b)(1) motion on its own initiative, and it must dismiss a case if it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506; *Stockman*, 138 F.3d at 151. Plaintiff's claims for mandamus relief, and any claims other than his claims against Judge in her official capacity for prospective injunctive and declaratory relief, should therefore be dismissed *sua sponte* without prejudice for lack of jurisdiction. *Id.; see also Thomas v. State*, 294 F. Supp. 2d 576, 591 n. 5 (N.D. Tex. 2018) ("[o]nce a court finds that [it] applies, the barred claims 'can be dismissed only under Rule 12(b)(1) and not with prejudice'") (quoting *Cooper*

*v. Sears*, No. Civ. A. 3:02-CV-0698-R , 2004 WL 515607, at *1 (N.D. Tex. Jan. 9, 2004) (quoting *Warnock,*, 88 F.3d at 343)).

Plaintiff's claims for prospective injunctive and declaratory relief against Judge in her official capacity are not barred by Eleventh Amendment immunity, however. *See Thomas,* 294 F. Supp. 2d at 593 (citing *Griffin v. American Zurich Ins. Co.*, No. 3:14-CV-2470-P, 2016 WL 3361528, at *3 (N.D. Tex. Feb. 24, 2016) (applying *Ex parte Young* to deny dismissal of § 1983 claims for prospective injunctive relief against state officials in their official capacities)). Accordingly, the Court next considers Judge's argument that it should abstain from hearing these claims under the *Younger* abstention doctrine.[7]

## C.    <u>Younger Abstention Doctrine</u>

Under the *Younger* abstention doctrine, which takes its name from *Younger v. Harris*, 401 U.S. 37 (1971), "federal courts must refrain from considering requests for injunctive or declaratory relief based upon constitutional challenges to ongoing state civil proceedings." *Price v. Porter*, 351 F. App'x 925, 927 (5th Cir. 2009)(citing *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003)); *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing cases). "While it was once thought that *Younger* applied only to state criminal or 'quasi-criminal' proceedings, the [Supreme] Court has now made it clear that '[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685 F.2d 974, 978–79 (5th Cir. 1982) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Three conditions must

---

[7]  Although she initially seeks dismissal of Plaintiff's claims based on judicial immunity, Judge also seeks abstention under the *Younger* doctrine.  (*See* doc. 31 at 8.)  This argument is "often raised through a Rule 12(b)(1) motion[.]" *M.D. v. Perry*, 799 F. Supp. 2d 712, 715 n. 3 (S.D. Tex. 2011).  As noted, a Rule 12(b)(1) jurisdictional challenge should be considered first.  *See Ramming*, 281 F.3d at 161.

be met for the doctrine to apply: '(1) the dispute must involve an 'ongoing state judicial proceeding;' (2) an important state interest in the subject matter of the proceeding must be implicated; and (3) the state proceeding must afford an adequate opportunity to raise constitutional challenges.'" *Thomas,* 294 F. Supp. 2d at 593-94 (quoting *Wightman–Cervantes v. Tex.*, No. 3:03-CV-3025-D, 2005 WL 770598, at *2 (N.D. Tex. Apr. 6, 2005) (citing *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996)).

### 1.    *Ongoing State Judicial Proceeding*

"To determine if a 'dispute involves an 'ongoing state judicial proceeding,' the point of reference is the date suit was filed.'" *Id.* at 594 (quoting *Wightman–Cervantes*, 2005 WL 770598, at *3 (quoting *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984)). "'Additionally, '[t]he state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process,' and, as a result, 'the *Younger* doctrine requires that federal courts abstain when a state proceeding is pending and the state appellate procedure has not been exhausted.'" *Id.*

Plaintiff contends that "the state level proceedings have ceased, and . . . there is no conflict with which to base an abstention." (doc. 39 at 8.) At the time he filed his federal complaint on July 12, 2019, Judge had scheduled a hearing for dismissal of his case for July 17, 2019. (*See* doc. 3 at 2.) Plaintiff's state trial court proceedings were ongoing at the time he filed his complaint, and he had not exhausted the state court appellate process. *Bowling v. Roach*, No. 19-41003, 2020 WL 2838622, at *3 (5th Cir. May 29, 2020) (citing *DeSpain* , 731 F.2d at 1178))( "In the most basic sense, a state proceeding is pending when it is begun before the federal proceeding is initiated and the state court appeals are not exhausted at the time of the federal filing."). Because his proceedings

were ongoing at the time he filed his complaint, the first condition is met.

### 2.    Important State Interest

Judge argues that the court should abstain from hearing a constitutional challenge to the state's statutory contempt procedures. (doc. 31 at 10.)

States have an important state interest in "administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco*, Inc., 481 U.S. 1, 12–13 (1987). Contempt orders also implicate an important state because a court "vindicates the regular operation of its judicial system," through the contempt process. *Juidice v. Vail*, 430 U.S. 327, 335 (1977); *Nall v. Stringer*, 4 F.3d 989 (5th Cir. 1993) ("The contempt power lies at the core of the administration of a State's judicial system ...."). "Interference with the State's contempt process is 'an offense to the State's interest . . . likely to be every bit as great as it would be were this a criminal proceeding.'" *Henry v. First Nat. Bank of Clarksdale*, 595 F.2d 291, 301 (5th Cir. 1979) (citing *Juidice*, 430 U.S. at 335-36.)

Here, Judge noted that the injunctive relief was sought for the "purpose of preventing harassment and extortion and placing parameters on the actions that are not allowed by order of [the state court], and to give Plaintiff notice of [those] parameters." (doc. 3 at 100.) She found that Plaintiff's emails and filings constituted harassment and extortion and were "actions that are not allowed by order of [that] Court," and she issued the TRO and temporary injunction to prevent him from continuing to litigate his case in a manner inconsistent with actions allowed by the state court procedures. He was prohibited from "communicating directly with the defendants, or the counsel of the defendants . . . and removed his ability to record any of the conversations [or] interactions between himself and the opposing side," and faced contempt of court "including prison confinement, and financial sanctions," if he refused to comply with the TRO or temporary injunction. (*See* doc.

39 at 20, 22.) Judge's use of contempt power implicates an important state interest because it allows for the enforcement of judicial orders and placed "parameters on the actions that are not allowed by order of [the state court]." *See Pennzoil Co.*, 481 U.S. at 13 (citing *Juidice*, 430 U.S. at 336, n. 12, 97 S.Ct., at 1217, n. 12.) ("Contempt in these cases, serves, of course, to vindicate and preserve the private interests of competing litigants, ... but its purpose is by no means spent upon purely private concerns. It stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory."); *see also Mitchell v. Sec. Am., Inc.*, No. 3:11-CV-1948-N, 2014 WL 12833923, at *4 (N.D. Tex. Apr. 15, 2014) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) ( "[F]ederal courts refrain[ ] from interfering with pending 'civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions.'"); *Williams v. Dawson Cty.*, No. CIV.A. 5:04-CV-136-B, 2005 WL 236380, at *2 (N.D. Tex. Jan. 27, 2005) (finding the plaintiff claims requesting that the court order service of process in his lawsuit implicated an important state interest because they concern the administration of Texas' judicial system and the Supreme Court has repeatedly recognized that the states have an important state interest in administering certain aspects of their judicial systems.)

Moreover, to the extent any pending criminal proceedings for extortion or harassment were pending, they also implicate an important state interest because "[t]he state has a strong interest in enforcing its criminal laws." *Wightman-Cervantes v. Tex.*, No. Civ.A. 3:03-CV-3025-D, 2005 WL 770598, at *3 (N.D. Tex. Apr. 6, 2005) (quoting *DeSpain*, 731 F.2d at 1176); *see also Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018), *cert. denied sub nom. Gates v. Reed*, 139 S. Ct. 1171, 203 L. Ed. 2d 198 (2019) ( "[T]he underlying state proceeding concerns the enforcement of state criminal laws, something in which the state has a strong interest.")

13

In conclusion, because the state court proceedings implicate an important state interest, the second condition is also met.

### 3.    *Opportunity to Raise Constitutional Challenges*

As for the third condition, federal courts "should assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co.*, 481 U.S. at 15. To overcome this assumption, "the federal plaintiff must show that he had no opportunity to litigate the federal issue in state court." *Wightman–Cervantes v. Texas*, 2005 WL 770598, at *4 (quoting *DeSpain*, 731 F.2d at 1178).

Here, Plaintiff "has not alleged any facts showing that [he] was barred from raising [his] constitutional concerns in the state court proceedings." *Shipula*, 2011 WL 1882521, at *9. The fact that he was unsuccessful in his arguments in his state case does not mean that he has not had "an adequate opportunity to raise his constitutional challenges." *Beasley v. Krafcisin*, No. 3:13-CV-4972-M-BF, 2014 WL 4651996, at *2 (N.D. Tex. Sept. 17, 2014). To the extent he believes that his First, Fourth, Ninth, Thirteenth, and Fourteenth Amendment rights have been violated by the state court's orders enjoining him from recording proceedings, and requiring him to delete his YouTube videos, he has an adequate remedy at law because he may raise his constitutional concerns on direct appeal. *See Childress v. Watkins*, No. 5:14-CV-748-DAE, 2014 WL 4274311, at *3 (W.D. Tex. Aug. 28, 2014) (finding that "state proceedings, which include the appeal process, are adequate to redress any alleged constitutional deprivation").

Plaintiff also alleges that his Sixth Amendment rights were violated when he was denied the right to counsel at the *ex parte* hearing, in which he claims he "was found guilty of criminal [e]xtortion, [h]arassment, and found to be a threat to [the] '[p]hysical safety and wellbeing of society

14

as a whole.'" (doc. 39 at 14,16.) He claims his Eighth Amendment rights were violated because it was "an extremely cruel and unusual punishment to declare" him guilty of extortion and harassment. (*Id*. at 16.) Plaintiff concedes that charges were not filed against him for extortion or for harassment, however. (*See* doc. 39 at 25.)  To the extent any charges have since been brought against him for harassment or extortion, he will have "a full opportunity to raise his constitutional challenges in the Texas state courts on direct appeal in the event of conviction or through a state habeas writ challenging his detention or conviction." *Blakely v. Kelly*, No. 3:16-CV-2801-K-BN, 2016 WL 6581283, at *2 (N.D. Tex. Oct. 12, 2016) (citing *DeSpain*, 731 F.2d at 1176); *see also Pennzoil Co.*, 481 U.S. at 15 (federal courts "should assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Childress v. Watkins*, No. 5:14-CV-748-DAE, 2014 WL 4274311, at *3 (W.D. Tex. Aug. 28, 2014) (finding that "state proceedings, which include the appeal process, are adequate to redress any alleged constitutional deprivation").

Because Plaintiff has failed to show that he "had no opportunity to litigate the federal issue in state court," and he has an adequate remedy at law, the third condition is met.

### 4.    *Bad Faith Exception*

Although not expressly raised, Plaintiff's allegations of retaliation based his lawsuit against the state defendants may be liberally construed as invoking the bad faith exception to the *Younger* abstention doctrine. (*See* doc. 39 at 13-14.)

"The Fifth Circuit has applied the bad faith exception in 'two major circumstances': first,

15

when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct; and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass." *All American Check Cashing, Inc. v. Corley*, 191 F.Supp.3d 646, 660 (S.D. Miss. 2016) (citations omitted) (citing cases). If the exception applies, a federal court must abstain from entering an injunction "unless the movant pleads and proves bad faith, harassment, or other exceptional circumstances...." *Wightman–Cervantes*, 2004 WL 2512208, at *2 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 87 (5th Cir. 1992) ). The "'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). The plaintiff "has the burden of showing that the exception applies." *Wightman–Cervantes*, 2005 WL 770598, at *5 (citing *Stewart v. Dameron*, 460 F.2d 278, 279 (5th Cir. 1972)). The bad faith exception applies where:

> (1) the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and that the state's bringing of the criminal prosecution was motivated, at least in part, by a purpose to retaliate for or to deter that conduct; and (2) the state fails to show by a preponderance of the evidence that it would have decided to prosecute even had the impermissible purpose not been considered.

*Jordan v. Reis*, 169 F.Supp.2d 664, 669 (S.D. Tex. 2001) (citing *Wilson v. Thompson*, 593 F.2d 1375, 1382–83 (5th Cir. 1979)).

Here, Plaintiff claims that the injunction requiring him to delete his videos was "exclusively as a result of [Plaintiff's] very bringing of the underlying suit." (doc. 39 at 13.) He claims that he was "under the threat of force, violence, and fear, including prison confinement, and financial sanctions," if he refused to comply with the TRO, but he fails to allege facts to support an inference that that the TRO was issued as retaliation or for an impermissible purpose. Plaintiff has not alleged that Judge initiated either the TRO hearing or the temporary injunction that was issued against him.

16

*All American Check Cashing, Inc.*, 191 F.Supp.3d at 660–62 (stating that the bad faith exception applies where a state commences the action); *Jordan*, 169 F.Supp.2d at 668 ("This well carved out exception derives from the notion that a state does not have a legitimate interest in pursuing bad faith prosecutions"). Rather, he alleges that the defendants' attorney sought a TRO for "immediate protection from the imminent threat of physical danger from Plaintiff." (doc. 3 at 3.) He has not met his burden to show that the bad faith exception applies because he makes only conclusory and speculative allegations that requiring him to delete his videos was retaliation against him for filing suit. *See Wightman–Cervantes*, 2005 WL 770598, at \*5 (citing Stewart, 460 F.2d at 279) (recognizing the burden is on the plaintiff to establish that the bad faith exception applies). Regarding his alleged criminal prosecutions, Plaintiff asserts that Judge found him guilty of attempted harassment and attempted extortion "without trial and without impartial jury." (doc. 39 at 15.) His response concedes that charges for extortion and harassment were not filed against him. (*Id*. at 26.)

Plaintiff's filing of his civil lawsuit against the state defendants over the property improvements was constitutionally protected conduct. *See Wilson*, 593 F.2d at 1387 ("It is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances"). He has not, however, alleged sufficient facts to show that any alleged subsequent prosecution was "instituted and conducted ... to retaliate for or to deter constitutionally protected conduct...." *All American Check Cashing, Inc.*, 191 F.Supp.3d at 660 (emphasis in original); *see also Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (per curiam) (the bad faith exception applies "if the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred is constitutionally protected and that the state's bringing of the criminal prosecution

17

is motivated at least in part by a purpose to retaliate against or deter that conduct"). Plaintiff offers only speculation that Judge issued the TRO and temporary injunction for the purpose of retaliating against him. *See Wightman–Cervantes*, 2004 WL 2512208, at *3–4 (declining to apply the bad faith exception where the plaintiff failed to plead facts in support of his conclusory allegations regarding the actions of a judge and prosecutor); *compare Jordan*, 169 F.Supp.2d at 669 (finding that the defendant was motivated to retaliate against the plaintiff's constitutionally protected right where (1) the defendant relied on testimony of two felony inmates to procure an indictment, and (2) the county attorneys offered to dismiss the plaintiff's criminal case if he would drop his civil case against the county and sheriff. The allegations in Plaintiff's complaint do not support application of the bad faith exception to permit him to seek injunctive relief in his state proceeding.

In conclusion, Plaintiff's claims for prospective declaratory and injunctive relief against Judge should be dismissed without prejudice for lack of subject matter jurisdiction under the *Younger* abstention doctrine.

### III.  RULE 12(b)(6)

Judge also moves to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim on grounds that she is immune from suit. As noted, Plaintiff's response clarifies that he sues Judge in her official capacity. (*See* doc. 39 at 10.) Although the Court lacks jurisdiction over Plaintiff's claims against Judge in her official capacity, to the extent that his original complaint or response may be interpreted as seeking any relief against her in her individual capacity, her Rule 12(b)(6) motion is also considered.[8]

---

[8] When a plaintiff does not specify the capacity in which he sues, courts look to the course of proceedings to determine the capacity in which a defendant is sued. *See United States ex rel. Adrian v. Regents of Univ. of Calif.*, 363 F.3d 398, 402-03 (5th Cir. 2004) (noting that while it was unclear whether the complaint named employees in their official or personal capacities, the course of proceedings demonstrated that they were only named in their official capacities, and

A.    **Legal Standard**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229 (2000). It is well-established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," however. *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a

---

the plaintiff had not challenged the assertion that the employees should be dismissed because they were only named in their official capacities); *Harmon v. Dallas Cty.*, 294 F. Supp. 3d 548, 569 n.6 (N.D. Tex. 2018) (noting that courts generally look to the course of the proceedings to determine the nature of liability sought to be imposed when a plaintiff does not specify the capacity in which an official is sued) (quoting *Adrian*); *but see Douglas v. Gusman*, 567 F. Supp. 2d 877, 888-89 (E.D. La. 2008) (when a pro se plaintiff does not specify whether a defendant in named in his official or individual capacity, it is generally presumed by operation of law that the defendant is named in his official capacity) (citations omitted). Based on the specific allegations that Judge violated his constitutional rights, Plaintiff's claims could be liberally construed as asserted against her in her individual capacity. *See Thomas*, 294 F. Supp. 3d at 604 n. 13.

complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If ... matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For purposes of a Rule 12(b)(6) motion, "pleadings" include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499

20

(quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiff attached to his complaint copies of his state court filings including email attachments filed with his complaint in his state lawsuit, the defendant's filings in state court, and copies of the temporary injunction issued by Judge. (doc. 3 at 31-104.) These documents are therefore considered part of the pleadings.  *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. Judge's motion to dismiss also includes copies of the documents filed in Plaintiff's lawsuit filed in state court, and it includes copies of the order for temporary injunction and the TRO against Plaintiff. (*See* doc. 32-1.)  Because these documents are central to Plaintiff's general theory of the case, they are considered part of the pleadings. *See Collins*, 224 F.3d at 498-99.  Conversion of the motion to dismiss into a motion for summary judgment is unnecessary. *See id.; Katrina Canal Beaches*, 495 F.3d at 205.

**B.    <u>Judicial Immunity</u>**

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Id*. at 11. A plaintiff can overcome the bar of judicial immunity only under two very limited circumstances. *See Mireles*, 502 U.S. at 11–12; *see also Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

First, a judge is not immune from suit for actions that are not "judicial" in nature. *See Mireles*, 502 U.S. at 11. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009) (quoting *Mireles*, 502 U.S. at 12). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, [a court should] look to the particular act's relation to a general function normally performed by a judge...." *Id*.

> [The Fifth Circuit] has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. These factors are broadly construed in favor of immunity.

*Davis*, 565 F.3d at 222–23 (citations omitted). "The absence of one or more factors will not prevent a determination that judicial immunity applies." *Carter v. Carter*, No. 3:13-CV-2939-D (BF), 2014 WL 803638, at *1 (N.D. Tex. Feb. 20, 2014) (citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) ). Second, a judge is not immune from suit for actions that although judicial in nature, are taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12; *see also Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

Plaintiff claims that the injunctive relief issued by Judge  was "taken with a clear absence of jurisdiction." (doc. 3 at 4; doc. 39 at 11.) He claims Judge held an *ex parte* meeting during which she found him guilty of extortion and harassment and "denied his 6th [A]mendment right to representation by counsel[.]" (doc. 39 at 14.) He alleges that Judge denied his argument that he had a First Amendment right to record the proceeding of which he was a part, and "barred [P]laintiff

22

from recording the proceedings" because the court reporter's notes were sufficient to preserve the record. (*Id.* at 23.) Although there is a right of access to attend, listen and report trials, "[n]o case suggests that this right of access includes a right to televise, record, or otherwise broadcast trials." *See United States v. Edwards*, 785 F.2d 1293, 1295 (5th Cir. 1986); *see also Conway v. United States*, 852 F.2d 187, 188 (6th Cir. 1988) (upholding the constitutionality of court rules prohibiting broadcasting, telecasting, and photographing of judicial proceedings when faced with a First Amendment challenge).

He also appears to allege that Judge conspired with the defendants' attorney to deprive him of his constitutional rights, and was induced into "unlawfully obstructing" the movement of articles and commodities used in interstate commerce by requiring the deletion of his videos. (*Id.* at 11, 20.) He fails to makes any specific allegations regarding Judge's involvement in the alleged conspiracy, does not allege that she acted outside the scope of her judicial duties, and makes only conclusory allegations that she was without jurisdiction. (*See id.* at 11); *see also Florance v. Buchmeyer*, 500 F.Supp.2d 618, 636 (N.D. Tex. 2007). "The fact that it is alleged that the judge acted pursuant to a conspiracy ... is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

Plaintiff's allegations all center around Judge's order granting injunctive relief against him in his state lawsuit. The facts, as alleged by him, show that Judge was acting in her judicial capacity and within her jurisdiction. The TRO was issued based on the defendants' attorney's application after finding that the defendants would be irreparably injured due to Plaintiff's "repeated attempts to harass and extort." (doc. 3 at 93.) Judge acted within her authority in denying Plaintiff's argument that he had a right to record the proceedings. *United States v. Kerley*, 753 F.2d 617, 622 (7th Cir.

23

1985) (finding the court's rule "ban[ning] ... cameras in the courtroom to be a reasonable exercise of the rulemaking power and not in violation of [the plaintiff's] first amendment rights."). The temporary injunction was issued after a hearing, at which Judge found good cause in the evidence and testimony to order the temporary injunction. (doc. 3 at 3.)

Plaintiff's claims against Judge are based on actions that are "normally performed by a judge," and he specifically alleges that Judge was "acting in [her] official [capacity] as associate judge . . . for the 68th Civil District of Texas." *See Liptak v. Banner*, No. 3:01-CV-0953-M, 2002 WL 378440, at *2 (N.D. Tex. Mar. 7, 2002) (citing *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286). Because the alleged conduct by Judge was judicial in nature and undertaken under the jurisdiction provided to the 68th Judicial District Court of Dallas County, Texas, she is entitled to absolute immunity from any claims against her in her individual capacity.[9]

## C.   Ethics and Disciplinary Committee Review

Plaintiff seeks an "Ethics and Disciplinary committee review" of Judge based on her actions in his state court proceedings. (*See* doc. 3 at 4.)

Section 1983 "was enacted to redress civil rights violations by persons acting under color of State law" and is not the proper vehicle to initiate an ethics or disciplinary review with the state bar. *See Darian v. Cashe*, No. CV 17-52-JJB-EWD, 2017 WL 3326976, at *10 (M.D. La. July 17, 2017), *report and recommendation adopted sub nom. Darian v. Anderson*, No. CV 17-52-JJB-EWD, 2017 WL 3326755 (M.D. La. Aug. 2, 2017) (citing *Ayo v. Simoneaux*, CIV.A. 08-963, 2008 WL

---

[9]  To the extent that Plaintiff seeks mandamus relief against Judge in her individual capacity, federal courts lack "the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Moye v. Clerk, Dekalb County Sup.Ct.*, 474 F.2d 1275, 1275–76 (5th Cir.1973). This Court is therefore without power to order Judge to remove the TRO or temporary injunction, and his claim is also subject to dismissal on this basis. *See Santee v. Quinlan*, 115 F.3d 355, 357 (5th Cir.1997) (affirming dismissal of petition for writ of mandamus as frivolous because federal courts lack the power to mandamus state courts in the performance of their duties).

2944874, at *5 (E.D. La. July 31, 2008) (To the extent that the plaintiff sought to have the court bring disciplinary actions against three attorneys for their involvement in the state custody proceeding, those claims must be brought before the Louisiana Supreme Court, which has exclusive original jurisdiction of disciplinary proceedings against a member of the bar.). To the extent that he seeks to initiate disciplinary actions against Judge through this lawsuit, Plaintiff fails to state a claim.

## IV. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. However, "[w]hen a plaintiff is given an opportunity to amend a complaint that fails to state a claim upon which relief can be granted, but refuses to do so, then the district court is justified in dismissing the complaint with prejudice." *Rodriguez v. U.S.*, 66 F.3d 95, 98 (5th Cir. 1995). Additionally, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, it appears that Plaintiff has alleged his best case. Even if afforded an opportunity to amend, the Court lacks jurisdiction over his official capacity claims, any individual capacity claims against Judge are barred by judicial immunity, and he fails to state a claim for any other type of relief. An opportunity to amend is therefore unwarranted.

## V.  RECOMMENDATION

Judge's motion to dismiss should be **GRANTED**. Plaintiff's claims against her in her official capacity should be **DISMISSED without prejudice** for lack of subject matter jurisdiction, and any claims against her in her individual capacity, as well as any claim for ethics and disciplinary committee review, should be **DISMISSED with prejudice** for failure to state a claim.

**SO RECOMMENDED**, this 10th day of August, 2020.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

26

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE